UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LYDELL SWINSON, | |
| Plaintiff | CIVIL ACTION NO. 3:24-cv-00591 |
| v. | (MEHALCHICK, J.) |
| CO SMITH, *et al.*, | |
| Defendants. | |

## MEMORANDUM

Plaintiff Lydell Swinson ("Swinson"), an inmate housed at the State Correctional Institution, at Mahanoy, Pennsylvania ("SCI-Mahanoy"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Correctional Officer Smith, Unit Manager Heenan, Unit Manager Larson, Counselor Diorio,[1] and Superintendent Mason. Before the Court is Defendants' Rule 12(b) motion (Doc. 16) to partially dismiss the complaint.[2] For the reasons set forth below, the Court will grant the motion.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

The gravamen of Swinson's complaint is that he was fired from his prison job at SCI-Mahanoy in retaliation for expressing his political views. (Doc. 1).

Swinson alleges that, on or about April 5, 2022, he was fired from his job as a Certified Peer Specialist ("C.P.S.") worker. (Doc. 1, at 4). He alleges that approximately 7 to 10 days prior, Swinson, who identifies himself as an African American male, had a conversation with

---

[1] Swinson spells this Defendant's name as "Dorio." In their filings, however, Defendants identify this individual as "Diorio." (*See* Doc. 20). The Court will adopt Defendants' spelling as correct.

[2] Defendants assert that if their motion is granted, this action shall only proceed on the First Amendment retaliation claim against Defendant Smith in her individual capacity. (Doc. 20, at 5).

other African American inmates about the political climate in America. (Doc. 1, at 4 ¶ 1). During this conversation, Swinson stated, "Trump is an idiot. He is never going to be president again because they are going to put him in jail for that January 6 shit and all the other crimes he is accused of." (Doc. 1, at 4 ¶ 2). Swinson asserts that Defendant Smith overheard part of his comments and became irate and ordered Swinson to "[s]hut the fuck up before I put you in the hole" and "you are going to regret that." (Doc. 1, at 4 ¶ 3). Swinson complied and went to his cell. (Doc. 1, at 4 ¶ 4).

A few days later, Swinson was called to the guard's desk and Defendant Smith instructed him to go to the activity room and talk to inmate Tillman. (Doc. 1, at 5 ¶ 5). Swinson entered the activity room alone and when inmate Tillman saw Swinson, Tillman said, "I don't want to talk to no C.P.S., I need to talk to a psych ('psychologist')." (Doc. 1, at 5 ¶ 6). Swinson then left the activity room, returned to the guard's desk, and informed Defendant Smith that inmate Tillman did not want to talk to Swinson and wanted to see a psychologist. (Doc. 1, at 5 ¶ 7). Swinson then walked away. (Doc. 1, at 5 ¶ 8). Swinson asserts that when an inmate refuses to speak to a C.P.S. worker, "there is nothing for the C.P.S. worker to do except report the information to the Block officer." (Doc. 1, at 5 ¶ 9).

On April 5, 2022, Defendant Heenan allegedly informed Swinson that he was fired from his C.P.S. job. (Doc. 1, at 5-6 ¶ 10).

On or about April 8, 2022, Swinson filed grievance number 975343 alleging that Defendant Smith initiated the removal of Swinson from his C.P.S. job by lying to Swinson's supervisors. (Doc. 1, at 6 ¶ 11). He avers that Defendant Smith reported that she personally witnessed Swinson refuse to see inmate Tillman when Tillman was in crisis. (Doc. 1, at 6 ¶ 12). Swinson maintains that Defendant Smith's report is "easily discredited" by video footage

of the A-A-Block and that the false report by Smith was "substantially motivated by [Swinson's] political views in relation to Donald Trump." (Doc. 1, at 6 ¶¶ 13-14).

Swinson sent inmate request slips to Defendants Diorio, Heenan, Larson, and Mason to address the unwarranted firing. (Doc. 1, at 6 ¶ 15). Swinson alleges that these Defendants "are in a position to investigate the false report of Defendant Smith and to reinstate [his] job, but failed to do so." (Doc. 1, at 6 ¶ 16). Swinson asserts that, shortly after he lost his C.P.S. job, he was transferred to B-A-Block. (Doc. 1, at 7 ¶ 17).

Based on these alleged acts, Swinson avers that Defendant Smith retaliated against him for exercising his right to free speech, and that Defendants Heenan, Larson, Diorio, and Mason conspired to retaliate against him for exercising his right to free speech. (Doc. 1, at 8).

Swinson alleges that he suffered the loss of his job and wages, he was moved to another block, he lost privileges unique to A-A-Block, and has only been eligible for low paying jobs. (Doc. 1, at 8). He seeks monetary damages. (Doc. 1, at 8).

Defendants move to dismiss the official capacity claims against all Defendants, and all claims against Defendants Heenan, Larson, Diorio, and Mason. (Doc. 20). The motion is ripe for resolution.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal

claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed

in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting FED. R. CIV. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must

permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**III.   DISCUSSION**

    A.   PERSONAL INVOLVEMENT OF HEENAN, LARSON, DIORIO, AND MASON

It is well established that, in Section 1983 actions, liability cannot be "predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Rather, a Section 1983 plaintiff must aver facts that demonstrate "the defendants' personal involvement in the alleged misconduct." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citing *Rode*, 845 F.2d at 1207). Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through allegations of "personal direction" or of "actual knowledge and acquiescence"; however, such averments must be made with particularity. *Dooley*, 957 F.3d at 374 (quoting *Rode*, 845 F.2d at 1207). Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability. *See Dooley*, 957 F.3d at 374 (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of [plaintiff]'s grievance").

Swinson attempts to hold Defendants Heenan, Larson, Diorio, and Mason liable based upon their involvement in the grievance procedure. (Doc. 1, at 6 ¶¶ 15-16). The complaint does not contain any other factual allegations against Defendants Larson, Diorio, and Mason.[3] As stated, it is well-established that the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan*

---

[3]The complaint contains an additional factual allegation against Defendant Heenan (*see* Doc. 1, at 5-6 ¶ 10), as discussed *infra*.

*v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Thus, insofar as Swinson's claims against Defendants Heenan, Larson, Diorio, and Mason are premised on their involvement with the grievance process, dissatisfaction with responses to inmate request slips and grievances does not support a constitutional claim. *See Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (nonprecedential) (concluding that involvement in the post-incident grievance process is not a basis for § 1983 liability). They are entitled to dismissal on this ground.

Additionally, Swinson alleges that Defendant Heenan informed him that he was fired from his C.P.S. job on or about April 5, 2024. (Doc. 1, at 5 ¶ 10). In order to plausibly state a claim under Section 1983, a plaintiff must allege that each defendant was personally involved in the act or acts that he claims violated his federally protected rights. *See Rode*, 845 F.2d at 1207. "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode*, 845 F.2d at 1207); *Dooley*, 957 F.3d at 374 (stating that "[p]ersonal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence'" (quoting *Rode*, 845 F.2d at 1207)). Swinson's allegation that Defendant Heenan "told" him that he "was fired from his C.P.S. job" is insufficient to establish personal involvement by Heenan in the purported constitutional violation. (Doc. 1, at 5-6 ¶ 10). Defendant Heenan is entitled to dismissal for lack of personal involvement.

B. CONSPIRACY CLAIM

To demonstrate the existence of a conspiracy under Section 1983, a plaintiff must allege that two or more conspirators reached an agreement to deprive him of a constitutional

right under color of law. See *Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003). The complaint must not plead merely a "conclusory allegation of agreement at some unidentified point." *Twombly*, 550 U.S. at 557. A plaintiff must allege "facts that plausibly suggest a meeting of the minds" with specific facts addressing "the approximate time when the agreement was made, the specific parties to the agreement…, the period of the conspiracy, [and] the object of the conspiracy." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178-79 (3d Cir. 2010); *see also Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991) (holding conspiracy claims based on plaintiff's subjective suspicions and unsupported speculation were properly dismissed at screening).

Swinson's conspiracy claim is comprised of subjective suspicions and unsupported speculation. (Doc. 1, at 6 ¶¶ 11-12, 15; Doc. 1, at 8 ¶ 20). Further, he cannot meet the requirement that two or more conspirators reached an agreement to deprive him of a constitutional right under color of law as inmates do not have a constitutional right to employment during incarceration. *See Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014) (*per curiam*) ("Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection.") (citing *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)); *Fiore v. Holt*, 435 F. App'x 63, 68 (3d Cir. 2011) (*per curiam*) ("[P]risoners enjoy no protected interest in prison employment."). The Court will grant Defendants' motion to dismiss the conspiracy claim.

C. OFFICIAL CAPACITY CLAIMS

Finally, Defendants seek dismissal of Swinson's claims against them in their official capacities. (Doc. 20, at 13-14). The Eleventh Amendment provides: "The Judicial power of

the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The Eleventh Amendment bars suits seeking monetary damages against a state and its agencies in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). There is no exception to Eleventh Amendment immunity for plaintiffs who bring state law claims against a state. *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 106 (recognizing that Eleventh Amendment immunity applies to state law claims in addition to federal claims).

Suits against state officials acting in their official capacities are really suits against the employing government agency, in this case the Department of Corrections, and, as such, are barred by the Eleventh Amendment. *A.W. v. Jersey City Public Schools*, 341 F.3d 234, 238 (3d Cir. 2003); *see also Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, *see* 42 PA. CONS. STAT. §§ 8521-22, it and its departments, as well as its officials sued in their official capacities, are immune from suits filed in federal court. Defendants' motion to dismiss any claim for monetary relief against them in their official capacities will be granted.

D. LEAVE TO AMEND

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the plaintiff leave to amend the complaint unless amendment would be inequitable or futile. *See Grayson*, 293 F.3d at 114. The Court finds that Swinson's claims are factually and legally flawed; thus, granting leave to amend would be both inequitable and futile.

## IV.   CONCLUSION

Consistent with the foregoing, the Court will grant Defendants' motion (Doc. 16) to partially dismiss the complaint. The official capacity claims against all Defendants will be dismissed, and the claims against Defendants Heenan, Larson, Diorio, and Mason will be dismissed. The First Amendment retaliation claim shall proceed against Defendant Smith in her individual capacity.

   An appropriate Order shall issue.

Dated: January 16, 2025                              *s/ Karoline Mehalchick*
                                                     **KAROLINE MEHALCHICK**
                                                     **United States District Judge**

10