UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

LYDELL SWINSON,

                Plaintiff

      v.

C.O. SMITH,

                Defendant.

CIVIL ACTION NO. 3:24-cv-00591

(MEHALCHICK, J.)

**MEMORANDUM**

Plaintiff Lydell Swinson ("Swinson"), an inmate housed at the State Correctional Institution, at Mahanoy, Pennsylvania ("SCI-Mahanoy"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The sole remaining claim is a First Amendment retaliation claim against Correctional Officer Smith in her individual capacity. (*See* Doc. 27; Doc. 28). Before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 39). For the reasons set forth below, the Court will grant the motion and enter judgment in favor of Defendant.

I.     STATEMENT OF FACTS[1]

From June 12, 2021 to April 4, 2022, Swinson worked as a Certified Peer Support ("CPS") at SCI-Mahanoy. (Doc. 40 ¶¶ 3-4; Doc. 50 ¶¶ 3-4).

---

[1]Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. M.D. PA. LOCAL RULE OF COURT 56.1. Unless otherwise noted, the factual background herein derives from the parties' statements of material facts. (Doc. 40; Doc. 50).

In the complaint, Swinson's allegations against Defendant are as follows: (1) Swinson alleges that he was fired from his job as a CPS worker at SCI-Mahanoy on or about April 5, 2022; (2) on an unknown date seven to ten days prior, Swinson had a conversation with other African American inmates about the political climate in America during which Swinson said, "Trump is an idiot. He is never going to be president again because they are going to put him in jail for that January 6 shit and all the other crimes he is accused of"; (3) Defendant Smith overheard at least part of Swinson's statement and said in response: "[s]hut the fuck up before I put you in the hole" and "you are going to regret that"; (4) Smith retaliated against Swinson for exercising his right to free speech by falsely reporting that Smith personally witnessed Swinson refusing to complete his CPS duties to support another inmate while in crisis; (5) Swinson alleges that he suffered the loss of his job, lost wages, has only been eligible for low paying jobs, was moved to another block, and lost privileges unique to A-A-Block; and (6) Swinson requests at least $20,000 in actual, compensatory, and punitive damages. (Doc. 40 ¶ 5; Doc. 50 ¶ 5).

Facts Related to the Alleged Protected Activity

Defendant asserts that: (1) Swinson cannot produce competent admissible evidence that that he engaged in a protected activity, especially where Swinson does not recall the date or details of the alleged protected activity; (2) Swinson cannot produce competent admissible evidence that Smith heard any protected speech by Swinson or heard its contents; and (3) Swinson cannot produce competent admissible evidence of the temporal proximity of alleged protected statements to other alleged actions of Smith. (Doc. 40 ¶¶ 6-8). Swinson "denie[s]" these statements. (Doc. 50 ¶¶ 6-8).

Facts Related to the Alleged Adverse Action

Defendant asserts that: (1) Swinson cannot produce competent admissible evidence that Smith took an adverse action against Swinson; (2) Swinson cannot produce competent admissible evidence that the alleged actions of Smith were sufficient to deter a person of ordinary firmness from exercising their constitutional rights; and (3) Swinson cannot produce competent admissible evidence that Smith participated in the decision to remove Swinson from CPS work. (Doc. 40 ¶¶ 9-11). Swinson "denie[s]" these statements. (Doc. 50 ¶¶ 9-11). Swinson asserts that "[t]he adverse action was concocting and perpetuating a lie against plaintiff." (Doc. 50 ¶ 9). He further asserts that "Defendant does not have to actually participate in the actual decision to take plaintiff's job, it is enough to set the adverse events in motion." (Doc. 50 ¶ 11).

The Pennsylvania Department of Corrections Policy 13.8.1 addresses the work of CPSs. (Doc. 40 ¶ 12; Doc. 50 ¶ 12).

Facts Related to an Alleged Substantial or Motivating Factor

Defendant maintains that: (1) Swinson cannot produce competent admissible evidence to establish the fact that he was retaliated against for expressing his political views about a political figure; (2) Swinson cannot produce any competent admissible evidence that any protected activity was a substantial or motivating factor of any action by Smith; and (3) Swinson cannot produce competent admissible evidence that Smith took an adverse action against Swinson due to a protected activity. (Doc. 40 ¶¶ 13-15). Swinson "denie[s]" these statements. (Doc. 50 ¶¶ 13-15).

Facts Related to Same Decision Defense

Swinson alleges, and realleged during his deposition, that Smith ordered Swinson to go into the activity room and talk to inmate Tillman. (Doc. 40 ¶¶ 16-17; Doc. 50 ¶¶ 16-17). Defendant maintains that Swinson left the activity room without talking to Tillman and reported to Smith that Tillman wanted to see a psychologist. (Doc. 40 ¶ 18). Swinson counters that he spoke with Tillman and "Tillman told plaintiff that he did not want to speak with plaintiff; that he wanted to see a psychologist." (Doc. 50 ¶ 18). The parties agree that after Swinson reported to Smith that Tillman said he wanted to see a psychologist, Swinson walked away. (Doc. 40 ¶ 19; Doc. 50 ¶ 19). Defendant asserts that Swinson's reason for walking away, without re-engaging with Tillman, was that there was nothing a CPS worker could do other than report the information to the block officer for them to deal with the situation. (Doc. 40 ¶ 20). In response, Swinson avers that "there is no CPS protocol to re-engage with Tillman (or any distraught inmate) once the distraught inmate refused to talk through his issues with the CPS worker." (Doc. 50 ¶ 20).

A meeting was conducted by the CPS supervisors. (Doc. 40 ¶ 21; Doc. 50 ¶ 21). Defendant maintains that the meeting was held to address this most recent report of Swinson refusing to see another inmate who was in crisis. (Doc. 40 ¶ 21). Swinson contends that it is "irrelevant whether plaintiff has seen the CPS supervisors in the past" and "this meeting, by the CPS supervisors, was conducted for no other reason that c/o Smith lied on plaintiff." (Doc. 50 ¶ 21).

The CPS committee determines whether or not to terminate a CPS worker. (Doc. 40 ¶ 22; Doc. 50 ¶ 22).

Swinson was counseled and suspended in the past due to several reports of his failure to complete his CPS job duties, the most recent suspension in 2020. (Doc. 40 ¶ 23). Swinson asserts that this statement is irrelevant. (Doc. 50 ¶ 23).

The parties dispute whether the CPS Committee decided to terminate Swinson due to several reported incidents over the prior two years. (Doc. 40 ¶ 24; Doc. 50 ¶ 24). Swinson was given multiple opportunities prior and at the time of his termination to improve his CPS job responsibilities. (Doc. 40 ¶ 25). Swinson asserts that this statement is irrelevant. (Doc. 50 ¶ 25).

Defendant asserts that, other than reporting what Smith witnessed, Smith had no other involvement in Swinson's termination. (Doc. 40 ¶ 26). Swinson contends that "[a]ll the involvement necessary was the initial lie." (Doc. 50 ¶ 26).

Smith was a corrections officer and bound by the policies of the Department of Corrections. (Doc. 40 ¶ 27; Doc. 50 ¶ 27).

<u>Facts Related to Damages</u>

Defendant avers that Swinson cannot produce competent admissible evidence that he incurred a physical injury due to the alleged retaliation and he cannot support his calculations of his claim for damages. (Doc. 40 ¶¶ 28-29). Swinson counters that these statements are irrelevant, and he is not seeking damages for emotional distress. (Doc. 50 ¶¶ 28-29).

## II.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." M.D. Pa. L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. *Morrison v. United States*, No. 1:20-CV-01571, 2021 WL 4192086, at *3 (M.D. Pa. Sept. 15, 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (noting that *pro se* parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants")).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*,

477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment."). With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

III.    DISCUSSION

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in constitutionally

protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422. If the prison officials can make this showing, it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

Defendant argues that Swinson's claim fails on each element and additionally raises the "same decision" defense. (Doc. 45 at 8-14; Doc. 53 at 3-6).

With respect to the first element, Swinson alleges that Defendant retaliated against him for exercising his First Amendment right to free speech. (Doc. 40 ¶ 5; Doc. 50 ¶ 5). The Court finds that Swinson has established that he engaged in protected conduct when he spoke to another inmate. *See Beard v. Banks*, 548 U.S. 521, 528 (2006) (imprisonment does not automatically deprive a prisoner of his First Amendment rights).

Defendant's argument with respect to the adverse action prong is that Swinson cannot proffer evidence that Defendant Smith—as a corrections officer—had the authority to cause the adverse actions. (Doc. 45 at 8-12; Doc. 53 at 4-5). The parties agree that the CPS committee determines whether or not to terminate a CPS worker. (Doc. 40 ¶ 22; Doc. 50 ¶ 22). Swinson's assertion that "Defendant does not have to actually participate in the actual decision to take plaintiff's job, it is enough to set the adverse events in motion" (Doc. 50 ¶ 11), misses the mark. According to Swinson, the adverse action was Defendant's obligatory report to the CPS committee, which Swinson claims was a "lie." (Doc. 50 ¶¶ 9, 26). Serving as the messenger of a report to the CPS committee does not make one a decision maker on the committee. Defendant's verbal report to the CPS committee is insufficient to satisfy the second element of an inmate's retaliation claim. *See, e.g.*, *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) (concluding, in connection with a claim that correction officer defendant retaliated against the plaintiff by requiring him to submit to a urinalysis testing and threatening to issue a misconduct report if plaintiff failed to comply, that one required urinalysis was not an adverse action and "because threats alone do not constitute retaliation, the claim relating to the threat failed"); *Marten v. Hunt*, 479 F. App'x 436, 439 (3d Cir. 2012)

(affirming grant of summary judgment in favor of defendant on retaliation claims based on verbal threats and the filing of a false misconduct report that was subsequently dismissed). It is undisputed that: Defendant was not personally involved in the adverse actions and, specifically, the decision to terminate Swinson from his job; Defendant did not issue a misconduct against Swinson; and Defendant only verbally reported Swinson's actions to the CPS committee, per DOC policy. The undisputed evidence confirms that Swinson did not suffer adverse action at the hands of Defendant Smith.[2]

Because Swinson has not established that he suffered an adverse action, the causation analysis is moot. Swinson has thus failed to provide evidence to support his *prima facie* First Amendment retaliation case against Defendant. Summary judgment, therefore, must be granted in Defendant's favor.

Assuming that Swinson has proffered sufficient evidence to establish a *prima facie* retaliation case against Defendant, his claim still fails because the evidence reflects that Defendant "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Watson*, 834 F.3d at 422 (quoting *Rauser*, 241 F.3d at 334). Defendant asserts that she would have made the same report to the CPS committee absent the alleged protected conduct by Swinson because, as a corrections officer, Smith must follow and enforce DOC policy. (Doc. 40 ¶ 27). In addition, the evidence of record establishes that Swinson would have been terminated from the position regardless

---

[2]The Court notes that prisoners do not have a protected interest in prison employment. *See James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir.), *cert. denied*, 493 U.S. 870 (1989). "Nonetheless, a prisoner cannot be fired from or passed over for a job in retaliation for exercising a constitutional right." *Howard v. Coupe*, 2023 WL 2207592 *2 (3d Cir. Feb. 24, 2023) (citing *Mack v. Warden Loretto FCI*, 839 F.3d 286, 300 n.76 (3d Cir. 2016)). As stated, it is undisputed that Defendant did not remove Swinson from his job; the CPS committee terminated him from his job. (Doc. 40 ¶ 22; Doc. 50 ¶ 22; Doc. 40-4 at 4).

of the protected activity because the justification for the termination was job performance.

(Doc. 40-4 at 4). Specifically, prison officials documented the following:

> A meeting was conducted by the CPS supervisors to address this most recent report of you refusing to see another inmate who was in crisis. The CPS committee determines whether or not you are terminated from your job. You have been counseled and suspended in the past due to several reports of you failing to complete your job duties, with the most recent suspension being in 2020. The CPS committee decided to terminate you due to several reported incidents over the past 2 years. You have been given multiple opportunities in the past and present to improve on your CPS job responsibilities.

(Doc. 40-4 at 4; *see also* Doc. 40-2).

Accordingly, Defendant has established that she would have made the same report to the CPS committee, and Swinson would have lost his job regardless of any purported retaliatory animus. The Court finds that this is another reason why summary judgment must be granted in Defendant's favor on the First Amendment retaliation claim.

## IV.    CONCLUSION

Consistent with the foregoing, the Court will grant Defendant's Rule 56 motion and enter judgment in her favor. (Doc. 39). An appropriate Order follows.

**Dated: June 11, 2026**                                *s/ Karoline Mehalchick*
                                                   **KAROLINE MEHALCHICK**
                                                   **United States District Judge**